UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| ROBERT GERALD REEVES,<br><br>    Plaintiff,<br><br>v.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. 2:22-cv-00037<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

Plaintiff Robert Gerald Reeves filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration (SSA) denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income (SSI) under Title XVI of the Social Security Act, *id.* §§ 1381–1383f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 4.) Reeves has filed a motion for judgment on the administrative record (Doc. No. 15), to which the Acting Commissioner has responded in opposition (Doc. No. 18), and Reeves has filed a reply (Doc. No. 19). Having considered the parties' arguments and the administrative record (Doc. No. 11) as a whole, the Magistrate Judge will recommend that the Court grant Reeves's motion for judgment on the administrative record, vacate the Acting Commissioner's decision, and remand for further administrative proceedings consistent with this Report and Recommendation.

## I. Background

### A. Reeves's DIB and SSI Applications

This is Reeves's second appeal from denials of his DIB and SSI applications. Reeves applied for DIB and SSI on August 16, 2012, alleging that he has been disabled by a back injury and unable to work since August 30, 2010. (AR 67, 78.[1]) The Commissioner denied Reeves's applications initially and on reconsideration. (AR 89, 90, 123, 124.) At Reeves's request, an administrative law judge (ALJ) held a hearing regarding his applications on August 6, 2014. (AR 32–66, 143–49.) The ALJ issued a written decision denying Reeves's applications on October 31, 2014 (AR 14–27), and the Social Security Appeals Council denied Reeves's request for review (AR 1–4).

Reeves filed a complaint in this Court appealing the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Complaint, *Reeves v. Soc. Sec. Admin.*, No. 2:16-cv-00114 (M.D. Tenn. Dec. 29, 2016), ECF No. 1. The Court found that the ALJ violated SSA regulations by "fail[ing] to account for [Reeves's] acknowledged moderate limitations in concentration, persistence and pace" in determining Reeves's residual functional capacity. *Reeves v. Berryhill*, No. 2:16-cv-00114, 2018 WL 1547856, at *2 (M.D. Tenn. Mar. 5, 2018), *report and recommendation adopted*, 2018 WL 1535462 (M.D. Tenn. Mar. 29, 2018) (*Reeves I*). Specifically, the Court found that the residual functional capacity's "purported restriction of maintaining [concentration, persistence, and pace] for two hours at a time is, in fact, no restriction at all, because a normal workday schedule anticipates maintaining [concentration, persistence, and pace] for two hours at a time." *Id.* The Court therefore granted Reeves's motion for judgment on the

---

[1] The transcript of the administrative record (Doc. No. 11) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

administrative record and remanded his DIB and SSI applications to the Social Security Administration for further consideration. *Reeves I*, 2018 WL 1535462, at *1.

On remand, the Social Security Appeals Council vacated the Commissioner's prior decision and remanded Reeves's applications to the ALJ for further proceedings consistent with this Court's order. (AR 753.) The same ALJ held a second hearing regarding Reeves's DIB and SSI applications on October 4, 2019. (AR 645–85.) The ALJ issued a second written decision denying Reeves's DIB and SSI applications on January 31, 2020. (AR 757–71.) Reeves filed written exceptions to the ALJ's second decision, and the Social Security Appeals Counsel remanded the case for reconsideration by a different ALJ. (AR 778–84.)

The second ALJ held a telephonic hearing regarding Reeves's applications on June 23, 2021. (AR 612–43.) Reeves appeared with a non-attorney representative and testified. (AR 614, 619, 622–37.) The ALJ also heard testimony from vocational expert William Harpool. (AR 637–41.)

    **B.**    **The ALJ's Findings**

On July 6, 2021, the ALJ issued a written decision finding that Reeves was not disabled within the meaning of the Social Security Act and applicable regulations and denying his claims for DIB and SSI. (AR 586–603.) The ALJ made the following enumerated findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

    2.    The claimant has not engaged in substantial gainful activity since August 30, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

    3.    The claimant has the following severe impairments: degenerative disc disease, right knee disorder, adjustment disorder, depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

\*    \*    \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can lift and carry, push and pull 10 pounds occasionally, and 10 pounds frequently. With normal breaks in an eight-hour day, he can sit for six hours, and stand and walk for two hours, with the claimant having the option to alternate between sitting and standing for a duration of five minutes, at an interval of 30 minutes, while remaining on task. The claimant can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch and crawl; can frequently reach overhead, handle and finger with the bilateral upper extremities; and can tolerate occasional exposure to dangerous hazards, such as unprotected heights, and dangerous moving machinery. The claimant can understand, remember and complete simple instructions and tasks, but not detailed, complex or executive level instructions and tasks; can concentrate and persist on simple tasks, but not detailed, complex or executive level tasks for at least two hours at a time; can acceptably relate with co-workers and supervisors on a frequent basis, and with the public on an occasional basis; and can adapt to occasional changes in a routine work setting.

\* \* \*

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 29, 1988 and was 21 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 30, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 589–602.) The Social Security Appeals Council denied Reeves's request for review on June 15, 2022, making the ALJ's decision the final decision of the Acting Commissioner.[2] (AR 575–80.)

### C. Appeal Under 42 U.S.C. §§ 405(g) and 1383(c)(3)

Reeves filed this action for review on August 11, 2022. (Doc. No. 1.) This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Reeves argues that the second ALJ also erred in determining his residual functional capacity by failing to account for his moderate limitations in maintaining consistency, persistence, and pace. (Doc. No. 15-1.) Reeves argues that this error requires remand because the only jobs that the vocational expert identified for him in the national economy "involve conveyor belts and quota driven work which is expressly the type of work that, while simple, require[s] additional vocational assessment with regard to how that type of work is affected by a moderate limitation in concentration, persistence and pace." (*Id.* at PageID# 1639.)

The Acting Commissioner responds that the ALJ's residual functional capacity is supported by substantial record evidence and that the restrictions limiting Reeves to "performing simple tasks, relating with co-workers and supervisors only frequently (i.e. at or less than two thirds of the day), interacting with the public only occasionally (i.e. one third of the day or less), and only having occasional changes in a routine work setting" sufficiently address Reeves's moderate limitations in concentration, persistence, and pace. (Doc. No. 18, PageID# 1651–52.)

---

[2] The Acting Commissioner was appointed to replace the former Commissioner on July 9, 2021. *See Soc. Sec. Admin.—Legality of Serv. of Acting Comm'r*, B-333543, 2022 WL 326059, at *2 (Comp. Gen. Feb. 1, 2022).

Reeves replies that the ALJ failed to explain "how a limitation to simple tasks accounts for [Reeves's] moderate limitations in concentration, persistence and pace" and specifically failed to explain how Reeves "is still capable of performing quota driven work, even if simple, given the prior finding of moderate limitations in concentration, persistence and pace." (Doc. No. 19, PageID# 1660, 1661.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to address the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be

reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B. Determining Disability at the Administrative Level

DIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies in the DIB and SSI contexts).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For purposes of this case, the regulations governing disability determination for DIB and SSI benefits are identical. *See Colvin*, 475 F.3d at 730 (citing 20 C.F.R. §§ 404.1520, 416.920). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v.*

*Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [his] limitations.'" *Combs*, 459 F.3d at 643 (first alteration in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits him to perform past relevant work, he is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of his residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can

perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**III.     Analysis**

This Court determined that remand was warranted in Reeves's first appeal because the prior ALJ's RFC failed to account for Reeves's moderate limitations in concentrating, persisting, or maintaining pace (CPP). *Reeves I*, 2018 WL 1547856, at *2. The prior ALJ found that Reeves had credible moderate CPP limitations but adopted an RFC providing that Reeves could perform light work as defined by SSA regulations with restrictions that Reeves:

> can lift and/or carry 30 pounds occasionally and 10 pounds frequently; stand, walk, and sit for 6 hours each during an 8-hour workday; frequently balance, kneel, crouch, and crawl; occasionally stoop; frequently reach overhead, handle, and finger with the bilateral upper extremities; and maintain concentration, pace and persistence for 2 hours at a time during an 8-hour workday.

(AR 18.)

The Court determined that the "purported restriction of maintaining CPP for two hours at a time [was], in fact, no restriction at all, because a normal workday schedule anticipates maintaining CPP for two hours at a time." *Reeves I*, 2018 WL 1547856, at *2; *see also id.* at *3 ("When the medical and opinion evidence reflect a plaintiff's moderate limitation in CPP, 'an RFC that states [p]laintiff can maintain concentration, persistence and pace and participate in a normal workday is not a reasonable finding.'" (quoting *Cala v. Colvin*, 3:14-CV-01060, 2016 WL 270303, at *17 (M.D. Tenn. Jan. 21, 2016))). The Court therefore concluded that the prior RFC lacked the support of substantial record evidence and remanded Reeves's DIB and SSI applications for reconsideration. *Id.* at *3.

On remand, the second ALJ found that Reeves has moderate CPP limitations and adopted a revised RFC providing that Reeves can perform sedentary work as defined by SSA regulations with restrictions that Reeves:

> can understand, remember and complete simple instructions and tasks, but not detailed, complex or executive level instructions and tasks; can concentrate and persist on simple tasks, but not detailed, complex or executive level tasks for at least two hours at a time; can acceptably relate with co-workers and supervisors on a frequent basis, and with the public on an occasional basis; and can adapt to occasional changes in a routine work setting.

(AR 591.) Reeves argues that the revised RFC still does not account for his moderate limitations in concentration, persistence, and maintaining pace. (Doc. Nos. 15-1, 19.) The Court must therefore determine whether the revised RFC is supported by substantial record evidence in light of Reeves's moderate CPP limitations.

SSA regulations provide the following guidance regarding a claimant's ability to concentrate, persist, or maintain pace:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. Part 404, Subpart P, App. 1, § 12.00E3.

The administrative record contains a mental residual functional capacity assessment and psychiatric review technique form completed by state consulting psychologist P. Jeffrey Wright, Ph.D. (AR 97–98, 101–103.) Wright concluded that Reeves experiences "[m]oderate" "[d]ifficulties in [m]aintaining [c]oncentration, [p]ersistence or [p]ace[.]" (AR 97.) He specifically found that Reeves's "ability to perform activities within a schedule," "complete a normal workday

10

and workweek without interruptions from psychologically based symptoms[,] and [ ] perform at a consistent pace without an unreasonable number and length of rest periods" was "[m]oderately limited[.]" (AR 102.) Record evidence shows that Ann Monis, Psy.D., and Linda Blazina, Ph.D., also opined that Reeves has moderate limitations in concentration, persistence, and maintaining pace. (AR 348, 1331.)

During the hearing, the ALJ posed three hypothetical questions with varying CPP restrictions to elicit the vocational expert's testimony regarding jobs in the national economy that Reeves might be able to perform:

> Q[.] Mr. Harpool, I'll give you three hypotheticals. For the first one, . . . assume the hypothetical individual with the same age, education, and prior work experience as that of the claimant. Further assume that this individual can lift and carry, push, and pull, ten pounds occasionally and ten pounds frequently, with normal breaks in an eight-hour day. This person can sit for six hours and stand and walk for two hours. . . . [T]his person ha[s] the option to alternate between sitting and standing for a duration of five minutes at an interval of thirty minutes, while remaining on task. The person can never climb ladders, ropes, or scaffolds. Can occasionally climb ramps and stairs. Can occasionally balance, stoop, kneel, crouch, and crawl. Can . . . frequently reach overhead, handle, and finger with the bilateral upper extremities. And can tolerate occasional exposure to dangerous hazards such as, unprotected heights and dangerous moving machinery.
>
> Now this person can understand, remember, and complete simple instructions and task[s] but not detailed, complex, or executive level instructions and tasks. This person can concentrate and persist on simple tasks, but no[t] detailed, complex, or executive level tasks for at least two hours at a time. This person can acceptably relate with coworkers and supervisors on a frequent basis, and with the public on an occasional basis. And can adapt to occasional changes in the routine work setting. Now would there be sedentary, unskilled work that this person could perform?
>
> A[.] Strictly under that hypothetical, yes, there would be some sedentary, unskilled jobs. I'll give you three representative examples. One would be some inspecting type jobs, usually checking, and sorting and grading. That would fall under inspecting. Let's see, a code for [that one] would be 521.687-086. That's 521.687-086, sedentary, SVP 2, and nationally under your hypothetical around 35,000 [jobs] . . . . A second example would be reduced, but some assembly jobs, some assembler. A code for one of those would be 713.687-018. That is 713.687-018, sedentary, SVP 2 again, and then about 90,000 [jobs] in the Nation . . . . And a third example would be what we call a hand working, hand packing jobs. Hand

working, hand packing, and a representative code for those, for a hand working, hand packing job would be 739.687-183. That is 739.687-182. National numbers approximately 70,000 [jobs] . . . .

Q[.] Okay. Thank you. For hypothetical two, assume the same facts as in hypothetical one, except that this person would be off task more than ten percent of the time due to pain and discomfort on a consistent basis. Would there be work that this individual could perform?

A[.] No, at that level, the individual would not meet the quality standard for competitive work.

Q[.] And hypothetical three, assume the same facts as in hypothetical one. In addition to normal breaks, in an eight-hour day, this person would require at least two additional fifteen-minute breaks on a consistent basis due to physical and psychological issues. Would there be work that this individual can perform?

A[.] No, that generally would not be permitted or accommodated. You'd have complaints from other workers, personnel problems, everybody is afforded the same breaks, so that would be special, so no jobs.

(AR 638–40.)

In his written decision, the second ALJ stated that he "assigned [Reeves] moderate limitations across the board on" a variety of criteria including CPP. (AR 586.) The second ALJ explained that he gave "great weight to the moderate limitations in maintaining concentration, persistence and pace assigned by Dr. Wright" and specifically attributed Reeves's moderate CPP limitations to his "back pain[.]" (AR 601.) The second ALJ also gave "great weight to the moderate limitations in maintaining concentration, persistence and pace" included in Monis's opinion (AR 586, 601) and similarly credited Blazina's assessment of moderate CPP limitations due to pain (AR 601).

There is thus no dispute that the ALJ found that Reeves has credible, moderate limitations in concentrating, persisting, and maintaining pace. The question is whether the ALJ's revised RFC and step-five determination that Reeves can perform work that exists in the national economy are supported by substantial evidence.

12

"To meet the burden of showing that [Reeves] could perform work that is available in the national economy, the Commissioner must make a finding 'supported by substantial evidence that [Reeves] has the vocational qualifications to perform specific jobs.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). The Commissioner may rely on "a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of" such a finding, but "the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (first citing *Howard*, 276 F.3d at 239, 241; and then citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). "An improper hypothetical cannot serve as substantial evidence. Nevertheless, hypothetical questions must incorporate only the limitations that the ALJ has accepted as credible." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436 (6th Cir. 2014) (first citing *Ealy*, 594 F.3d at 516; and then citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 2135 (6th Cir. 1993)). Further, SSA regulations require ALJs to "include a narrative discussion" in support of RFC determinations "describing how the evidence supports each conclusion" and "explain[ing] how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR96-8p, 1996 WL 374184, at *7 (July 2, 2996); *see also Collins v. Comm'r of Soc. Sec.*, 179 F. Supp. 3d 767, 771–72 (S.D. Ohio Mar. 28, 2016) (finding that ALJ failed to satisfy "narrative discussion" requirement in analyzing plaintiff's marked CPP limitations and corresponding RFC restrictions).

The second ALJ's first hypothetical to the vocational expert posited that Reeves could "concentrate and persist on simple tasks, but no[t] detailed, complex, or executive level tasks for at least two hours at a time." (AR 638.) This is the same restriction adopted by the second ALJ in

his RFC. (AR 591 (including restriction in RFC that Reeves "can concentrate and persist on simple tasks, but not detailed, complex or executive level tasks for at least two hours at a time").) The vocational expert responded that, under this hypothetical, jobs available to Reeves in the national economy would include "inspecting type jobs, . . . some assembly jobs, . . . [and] hand working" or "hand packing jobs." (AR 639.) But the record shows that the second ALJ gave great weight to Wright's opinion that Reeves's ability "to perform at a consistent pace without an unreasonable number and length of rest periods" is "[m]oderately limited[.]" (AR 102.) The first hypothetical—and the vocational expert's response to it—do not include this moderate limitation. In fact, the vocational expert later explained in response to questioning by Reeves's representative that these types of jobs all include pacing requirements. (AR 640–41.)

As the Sixth Circuit recognized in *Ealy*, a claimant with moderate limitations in maintaining pace "'may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.'" 594 F.3d at 517 (quoting *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005)). When the second ALJ incorporated pace limitations in the second and third hypotheticals by including time off-task or two additional fifteen-minute breaks as factors, the vocational expert testified that Reeves would no longer be employable for the jobs he found available to Reeves based on the first hypothetical. (AR 639–41.) Considering the record as a whole, the vocational expert's testimony does not provide substantial evidence sufficient to support the ALJ's conclusion that Reeves can perform specific jobs in the national economy. *See Howard*, 276 F.3d at 238–41; *Ealy*, 594 F.3d at 516.

The Acting Commissioner argues that the first hypothetical properly conveyed Reeves's limitations in concentration, persistence, and maintaining pace because "[a] limitation to simple type work can account for concentration deficits, as those deficits may only be encountered when

14

Case 2:22-cv-00037   Document 22   Filed 08/02/23   Page 14 of 16 PageID #: 1680

performing more complex work." (Doc. No. 18, PageID# 1654 (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016)).) But the second ALJ did not find that Reeves only encounters pacing limitations when performing complex tasks, and the Acting Commissioner has not pointed to any record evidence to support such a finding. Further, the second ALJ offered no explanation or narrative discussion of how the record evidence supports his finding that Reeves is capable of maintaining the pace required to perform conveyor belt and quota driven work without additional breaks. *See* SSR96-8p, 1996 WL 374184, at *7; *Collins*, 179 F. Supp. 3d at 771–72. Without supporting explanation, the second ALJ's conclusion that Reeves can perform this type of work cannot be squared with his affording great weight to Wright's opinion that Reeves has a moderate limitation in his ability "to perform at a consistent pace without an unreasonable number and length of rest periods." (AR 102.)

The second ALJ's decision that Reeves is not disabled lacks the support of substantial record evidence, and the Court should vacate the decision and remand for further proceedings.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Reeves's motion for judgment on the administrative record (Doc. No. 15) be GRANTED, that the Acting Commissioner's decision be VACATED, and that this matter be REMANDED to the SSA for further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 2nd day of August, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge